# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALFONSO G. GALARPE, <br> Plaintiff, <br> v. <br> UNITED AIRLINES, INC., <br> Defendant. | Case No. 17-cv-06514-EMC <br><br> **ORDER DENYING PLAINTIFF'S MOTION TO REMAND, AND GRANTING DEFENDANT'S MOTION TO DISMISS** <br><br> Docket Nos. 10, 17 |

Plaintiff alleges he was wrongfully terminated by Defendant United Airlines, Inc. ("United") on account of his status as a Filipino-American veteran over the age of 40, and that the termination caused him severe emotional distress. He was reinstated to his position after a labor arbitration found the termination lacked just cause, so he seeks principally damages for the emotional harm he suffered from events related to his termination. There are two motions pending before the Court: Defendant's motion to dismiss and Plaintiff's motion to remand on the basis that there is no diversity jurisdiction.

The Court concludes this matter is appropriate for resolution without a hearing. *See* Local Civ. R. 7-1(b). Plaintiff's motion to remand is **DENIED** because Plaintiff has not established that the Court lacks diversity jurisdiction, as United is not a citizen of California. Defendant's motion to dismiss is **GRANTED**. For the reasons below, Plaintiff has leave to amend his claims for wrongful termination, defamation, and intentional infliction of emotional distress; however, his claims for negligence and negligent infliction of emotional distress are dismissed without leave to amend.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The operative complaint is Plaintiff's First Amended Complaint, filed in San Mateo Superior Court on October 6, 2017. *See* Abidoye Decl. to Notice of Remand, Ex. B (Docket No. 1-1) ("FAC"). Defendant removed this case from San Mateo Superior Court to federal court on the basis of diversity jurisdiction, claiming to be a citizen of Illinois (headquarters) and Delaware (place of incorporation).

Plaintiff alleges he is Filipino-American and a veteran. FAC ¶ 4. He worked for United for over 30 years "with a spotless record." *Id.* In July and August 2016, Defendant "accused Plaintiff of committing a hate crime and/or engaging in hate speech." *Id.* ¶ 5. The specific basis for the accusation is not alleged in the complaint. The termination letter and arbitration decision attached to Plaintiff's opposition clarifies that Plaintiff was accused of hanging two nooses in a public workspace.[1]

On August 18, 2016, Defendant terminated Plaintiff. *Id.* ¶ 6. Plaintiff alleges that he prevailed in a labor-management arbitration and was ordered reinstated approximately one year later, on May 12, 2017. *Id.* ¶ 7. The arbitrator's decision is attached to Plaintiff's opposition. Docket No. 19-2, Ex. C. Plaintiff maintained during the investigation and arbitration that, as an immigrant from the Philippines, he was unaware of the connotation nooses had with respect to African-Americans; that he intended no harm or offense to anyone and harbored no ill-will toward African-Americans; that he tied the ropes in spare time at the end of his shift to see if he still remembered how to make a knot that he used to make as a child on a farm in the Philippines; that he did not intend anyone to see the ropes; and that on the second occasion the rope was not hanging but simply laying on a pile of other ropes. *Id.* The arbitration panel determined that there was no just cause for termination in these circumstances and ordered Plaintiff to be re-instated with full back-pay and award of benefits. *Id.* Plaintiff is now at work.

Plaintiff alleges he suffered "great emotional distress and depression" and "sought medical

---

[1] These attachments may be considered on a motion to dismiss because they are incorporated into the complaint. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (a document "may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim").

2

treatment" during his termination as a result of the accusations. *Id.* ¶ 8. He filed a "timely complaint" with California's Department of Fair Employment and Housing alleging various forms of discrimination, wrongful termination, and age and disability discrimination. *Id.*¶ 9. He received a right to sue letter on January 10, 2017. *Id.* ¶ 10. Both the complaint and the right to sue letter are attached to his opposition. Docket No. 19-2, Ex. B.

Plaintiff brings causes of action for wrongful termination in violation of public policy (First Cause of Action) (Cal. Gov. Code § 12940, et seq.); negligence (Second Cause of Action) based on Defendant's failure to "thoroughly and properly investigate the alleged hate-crime/hate speech before branding Plaintiff as a racist and terminating his employment," FAC ¶ 24; defamation (Third Cause of Action); and negligent and intentional infliction of emotional distress (Fourth and Fifth Causes of Action). He seeks general damages, special damages, injunctive and declaratory relief, punitive damages, reasonable attorneys' fees, and costs. *See* FAC, Prayer for Relief, at 6-7.

## II. MOTION TO REMAND

For diversity purposes, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). Plaintiff's motion to remand argues that United's "principal place of business" is California under the so-called "place of operations" test, which looks to where a corporation conducts business. *See Tosco Corp. v. Communities for a Better Environment*, 236 F.3d 495 (9th Cir. 2001). However, the Supreme Court explicitly abrogated *Tosco* in *Hertz Corp. v. Friend*, 559 U.S. 77 (2010), where it held that the phrase "principal place of business" for diversity purposes is "best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Id.* at 92-93. "It is the place that Courts of Appeals have called the corporation's 'nerve center'" and "should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination[.]" *Id.* at 93.

After *Hertz Corp.*, the place of operations test, which had "led some courts . . . [to] measur[e] the total amount of business activities that the corporation conducts there and

3

determin[e] whether they are 'significantly larger' than in the next-ranking State," *id.*, is no longer valid.[2] Thus, Plaintiff's argument that United is a citizen of California because of the substantial business it does here, citing information about the number of flights it operates at LAX and SFO versus O'Haire, is futile. Similarly, Plaintiff's citation to *Ghaderi v. United Airlines, Inc.*, 136 F.Supp.2d 1041, 1042 (N.D. Cal. 2001), which concluded United was a citizen of California on a similar basis, is unavailing. *Ghaderi* is no longer good law in light of the Supreme Court's adoption of the "nerve center" test and rejection of the "place of operations" or "business activities" test.[3] It is irrelevant how many flights United operates in California or how many employees work for it here. What matters after *Hertz Corp.* is the location of United's "nerve center." Plaintiff does not dispute that United's decision-making headquarters is in Illinois. *See* Notice of Remand ¶ 9 ("United's principal place of business is in the State of Illinois, which is where United's corporate headquarters and executive offices are located and where United's high-

---

[2] Plaintiff argues that the "nerve center" test is not the *only* valid test for "principal place of business" after *Hertz Corp.* because the Supreme Court stated that the nerve center is "typically" or "normally" the principal place of business. In context, however, it is clear that the Supreme Court's qualifications were merely meant to reflect its understanding that, given the vast difference between the size of corporations and their manner of operation, no jurisdictional test is perfect. The Court recognized that the nerve center test "may in some cases produce results that seem to cut against the basic rationale" for diversity jurisdiction, but that "in view of the necessity of having a clearer rule [than the business operations test]," "we must accept [such anomalies]." 599 U.S. at 96. Thus, the Court's qualifications do not indicate that another test would apply, but rather that occasional imperfection was the cost of a simple rule. Indeed, the Ninth Circuit has confirmed that in *Hertz Corp.*, "the Supreme Court resolved [] differing circuit court interpretations[of 'principal place of business'] and *settled on* the 'nerve center' test," and in so doing "provided a *uniform* test for courts to apply when determining the principal place of business for federal diversity jurisdiction purposes." *Harris v. Rand*, 682 F.3d 846, 851 (9th Cir. 2012) (emphasis added).

[3] Plaintiff claims no court has "overruled" *Ghaderi*, but that is beside the point because *Ghaderi* is not binding authority to begin with. Moreover, the case need not be explicitly overturned if its underlying rule has been rejected by a higher authority, as in *Hertz Corp.* Plaintiff, in any case, is wrong that recent citations by other courts somehow reaffirm *Ghaderi*'s vitality. In *Assaye v. United Airlines, Inc.*, 2017 WL 5560422, at *2-3 (D. Haw. Oct. 30, 2017), the court merely distinguished *Ghaderi* as immaterial and followed *Hertz Corp* to conclude that "[a] corporation's 'principal place of business' as its 'nerve center' . . . . Plaintiff's argument that Defendant is a citizen of Hawaii because it does business here is unfounded and completely disregards the well-established body of law concerning corporate citizenship." *Id.* The other two cases pre-date *Hertz Corp.* and therefore are not persuasive. *See Roland-Warren v. Sunrise Senior Living, Inc.*, 2009 WL 2406356 (S.D. Cal. Aug. 4, 2009); *Arellano v. Home Depot U.S.A., Inc.*, 245 F.Supp.2d 1102 (S.D. Cal. 2003).

1 level officers direct, control, and coordinate its activities."). Accordingly, United has met its
2 burden to demonstrate federal diversity jurisdiction. *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566
3 (9th Cir. 1992).

4 Plaintiff's motion to remand is **DENIED**.

### III. MOTION TO DISMISS

6 Defendant moves to dismiss on the basis that Plaintiff has failed to plead facts specific
7 enough to suggest that discrimination was a motivation for his termination; that his negligence
8 claim is barred by the exclusivity of the workers' compensation doctrine; that his defamation
9 claim is void of factual allegations; that his negligent infliction of emotional distress claim is also
10 barred by the workers' compensation doctrine; and that his intentional infliction of emotional
11 distress claims also fail based on defective theories and insufficient factual allegations. For the
12 reasons below, the Court **GRANTS** Defendant's motion.

A. <u>Legal Standard</u>

14 In considering a Rule 12(b)(6) motion to dismiss, a court must take all allegations of
15 material fact as true and construe them in the light most favorable to the nonmoving party,
16 although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a
17 Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). While "a
18 complaint need not contain detailed factual allegations ... it must plead 'enough facts to state a
19 claim to relief that is plausible on its face.'" *Id*. "A claim has facial plausibility when the plaintiff
20 pleads factual content that allows the court to draw the reasonable inference that the defendant is
21 liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl.*
22 *Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "The plausibility standard is not akin to a
23 'probability requirement,' but it asks for more than sheer possibility that a defendant acted
24 unlawfully." *Id.*

25 ///
26 ///
27 ///
28 ///

B.  Discussion

1.  Wrongful Termination

A common law wrongful termination claim rests on demonstrating a violation of public policy. *Holmes v. General Dynamics Corp.*, 17 Cal.App.4th 1418, 1426 (1993); *Tameny v. Atlantic Richfield Co.*, 27 Cal.3d 167, 172 (1980). Employment discrimination violates public policy and will support a wrongful discrimination claim. *City of Moorpark v. Sup. Ct. (Dillon)*, 18 Cal.4th 1143, 1158-1160 (1998). Similarly, a wrongful discharge claim may be premised on a violation of California's Fair Employment and Housing Act ("FEHA"), as asserted by Plaintiff here. *See Stevenson v. Sup. Ct. (Huntington Mem. Hosp.)*, 16 Cal.4th 880 (1997); FAC ¶ 14. Thus, whether Plaintiff has adequately pleaded a wrongful termination claim is coincident with whether he has adequately pleaded a violation of FEHA.

To make out a prima facie violation of California's FEHA, a plaintiff must show that "(1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive." *See Guz v. Bechtel Nat. Inc.*, 24 Cal.4th 317, 355 (2000). Moreover, the FEHA requires a plaintiff to show that "an illegitimate criterion was a *substantial* factor in the particular employment decision." *Harris v. City of Santa Monica*, 56 Cal.4th 203, 232 (2013) (emphasis in original, citation and quotation omitted).

Here, Plaintiff has adequately pleaded membership in a protected class (*see* FAC ¶¶ 4, 15), that he was performing competently (*id.* ¶ 4), and that he suffered an adverse employment action, termination (*id.* ¶ 6). The question is whether he has adequately pleaded circumstances that suggest that a discriminatory motive was a substantial factor in the decision. The parties disagree about the pleading standard in this context.

Defendant argues that Plaintiff must plead facts sufficient to meet his prima facie burden under *Guz*. Plaintiff responds with a pre-*Iqbal* Supreme Court case, *Swierkiwicz v. Sorema, N.A.*, 534 U.S. 506 (2002), in which the high court held that a "prima facie case relates to the employee's burden of presenting evidence" in contrast to his or her pleading burden, and all that is

required at the pleading stage is a statement that "give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* at 510 (quotation and citation omitted). After *Swierkiwicz,* however, the Supreme Court held that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal,* 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Under this standard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

*Swierkiwicz* has not been overruled. *Iqbal*, like *Swierkiwicz*, does not require Plaintiff to present facts *demonstrating* or *proving* a prima facie case in their complaint. Rather, *Iqbal* merely requires sufficient factual matter to be alleged that permits a "plausible inference" that a prima facie case has been stated. In the same vein, *Swierkiwicz* requires the complaint to give "the defendant fair notice of . . . the *grounds* upon which [the claim for relief] rests." 534 U.S. at 510 (emphasis added). The plaintiff cannot simply make conclusory allegations or allege legal labels. *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Here, Plaintiff's allegations fail to plausibly suggest a viable claim of discrimination. Though Plaintiff alleges with sufficient detail the employment action in question (the termination and investigation flowing from alleged hate speech and/or harassment), he presents *no* factual allegations explaining the *basis* for his contention that his race, veteran status, or age were substantial factors in Defendant's investigation and termination. The pleadings and incorporated materials demonstrate that Defendant cited Plaintiff's own alleged acts of racial discrimination as a basis to fire him; that accusation, in and of itself, does not plausibly suggest that Defendant purposefully discriminated against Plaintiff in making these accusations. Further, Plaintiff does not allege, for example, that other employees of a different race/age/veteran status were treated more leniently than he was, that he has been subjected to racial slurs or comments, or that there were any other acts showing a pattern of discrimination against him in his 30 years of employment. Thus, nothing plausibly suggests Plaintiff's protected status could have been a substantial motivating factor in the adverse action taken.

1    The Court therefore **GRANTS** Defendant's motion to dismiss the wrongful termination claim. Defendant has not identified any reason why the Court should not grant Plaintiff leave to amend. *See McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1099 (9th Cir. 2004) ("Leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts[.]") (citations and quotations omitted). Plaintiff has leave to amend the complaint if he can allege in good faith facts supporting a plausible inference that his protected status was a substantial motivating factor for his termination.

2. <u>Negligence</u>

A cause of action for negligence requires "(a) a legal duty to use due care; (b) a breach of such legal duty; [and] (c) the breach as the proximate or legal cause of the resulting injury." *Ladd v. County of San Mateo*, 12 Cal.4th 913, 917 (1996). Plaintiff alleges that United "had a duty to thoroughly and properly investigate the alleged hate-crime/hate speech before branding Plaintiff as a racist and terminating his employment" but that United "failed to do so." FAC ¶ 24. Defendant asserts that this claim fails because (1) negligence claims available for torts occurring during employment relationship are barred by exclusivity of the workers' compensation doctrine and (2) it had no legal duty to thoroughly investigate a claim before terminating Plaintiff. The Court agrees.

a.  <u>Exclusivity of Workers' Compensation Doctrine</u>

"Where the provisions of the workers' compensation system apply, an employer is liable without regard to negligence for any injury sustained by its employees arising out of and in the course of their employment." *Light v. Cal. Dep't of Parks and Recreation*, 14 Cal.App.5th 75, 96 (2017); Cal. Labor Code § 3600. "The employee, in turn, is generally prohibited from pursuing any tort remedies against the employer or its agents that would otherwise apply." *Id.* However, "[e]ven where an injury is otherwise compensable under the workers' compensation system, a cause of action seeking damages based on the injury may nevertheless be allowable where the employer's conduct falls outside the compensation bargain[.]" *Id.* at 96. To determine whether a claim may nevertheless proceed, "courts consider whether the alleged acts or motives that establish the elements of the cause of action fall outside the risks encompassed within the

8

compensation bargain." *Id.* at 96-97.

Plaintiff's negligence claim appears to meet the conditions for workers compensation coverage, namely, (i) that the employee must be "performing service growing out of and incidental to his or her employment and is acting within the course of his or her employment" at the time of injury, *id.* § 3600(a)(2); and (ii) that "the injury is proximately caused by the employment," *id.* § 3600(a)(3).

On the first prong, the California Supreme Court has held that employer investigation and discipline of misconduct occurs "within the course of employment" in the analogous context of determining whether the resulting psychiatric injuries qualify under California's disability retirement statute. *See Traub v. Bd. of Retirement*, 34 Cal.3d 793, 801 (1983) ("[W]hen an employee is investigated and disciplined by the employer on charges of misconduct that are unproved and therefore presumably false, and the discipline set aside, the resulting psychological stress and injury arises out of and in the course of employment within the meaning of section 31720 [disability retirement statute]."). One federal court has applied this principle to exclude claims of intentional and negligent infliction of emotional distress claimed premised on disciplinary proceedings. *See Markus v. McDonnell Douglas Helicopter Co.*, 1990 WL 165818, at *5 (C.D. Cal. Feb. 7, 1990) (holding that intentional and negligent infliction of emotional distress claims based on disciplinary action and resulting consequences were "barred and plaintiff's exclusive remedy is under the workers' compensation laws"). This suggests that an injury stemming from an investigatory or disciplinary act arises "within the course of employment."

On the second prong, Plaintiff alleges that the injury was proximately caused by the employment. FAC ¶¶ 24-25 (alleging Defendant failed to "thoroughly and properly" investigate allegations and that Defendant's acts caused the emotional harm alleged).

Because Plaintiff's claim meets the conditions of compensation, he may only proceed if he can show that "the alleged acts or motives that establish the elements of the cause of action fall outside the risks encompassed within the compensation bargain." *Light*, 14 Cal.App.5th at 96-97. With respect to his negligence claim, the alleged acts are failure to properly investigate the hate speech incident, resulting in false allegations against him and improper discharge. The California

9

Supreme Court has held that "when the misconduct attributed to the employer is actions which are a normal part of the employment relationship, such as demotions, promotions, criticism of work practices, and frictions in negotiations as to grievances, an employee suffering emotional distress causing disability may not avoid the exclusive remedy provisions of the Labor Code by characterizing the employer's decisions as manifestly unfair, outrageous, harassment, or intended to cause emotional disturbance resulting in disability." *Cole v. Fair Oaks*, 43 Cal.3d 148, 160 (1987). Although *Cole* does not directly address a failure to thoroughly investigate as Plaintiff alleges, the California Supreme Court made clear that "[t]he basis of compensation and the exclusive remedy provisions is an injury sustained and arising out of the course of employment, and then the essence of the wrong is personal physical injury or death, the action is barred by the exclusiveness clause *no matter what its name or technical form* if the usual conditions of coverage are satisfied." *Id.* (emphasis added). Plaintiff has not alleged that the investigation process or termination involved any acts that were not "a normal part of the employment relationship." *Id.*

Accordingly, Plaintiff's negligence theory, premised on the inadequacy of the investigation and the resulting termination and accusation of violating the company's anti-harassment policies, is foreclosed by the workers' compensation doctrine.

b. Legal Duty to Properly Investigate

Even if the workers' compensation system did not preclude the negligence theory asserted here, then Plaintiff's claim would fail because Defendant had no legal duty to Plaintiff to conduct its investigation in any particular way. Plaintiff argues that antidiscrimination law imposes a general duty of "reasonableness" because it requires an employer to take "*reasonable* steps . . . to prevent discrimination and harassment from occurring." Cal. Gov. Code § 12940(k) (emphasis added). This duty under § 12940(k) describes, however, an employer's prospective defense from a discrimination claim, not a legal duty vis-à-vis an accused party to take only "reasonable" steps in investigating complaints of harassment.

Accordingly, the Court **DISMISSES** Plaintiff's negligence claim without leave to amend.

3. Defamation

A defamation claim requires demonstrating "(a) a publication that is (b) false, (c)

10

defamatory, (d) unprivileged; and (e) that has a natural tendency to injure or that causes special damages." *Taus v. Loftus*, 40 Cal.4th 683, 720 (2007).

Defendant argues that Plaintiff's allegation that United "accused [him] of committing a hate crime and/or engaging in hate speech" and "branding him a racist" are insufficient to support a claim for defamation because they do not identify who made the allegedly defamatory statements or make any allegations that explain they were false or defamatory. Mot. at 6. However, Plaintiff also alleges that he was "defamed internally and externally by Defendant UAL, by and through its agents and employees." FAC ¶ 29. Defendant is correct that these pleadings are too bare for the Court to be able to determine whether Plaintiff has stated a claim. Although the nature of the defamatory statement can be inferred ("branding him a racist"), the context of the statement is unclear: we do not know the particular person who made it, the alleged persons to whom it was made, or when it was made.

Thus, Plaintiff has not pled with sufficient specificity to infer that a "publication" occurred. The Court, therefore, **DISMISSES** Plaintiff's defamation claim.

In his opposition, Plaintiff clarifies that the publication in question was the termination letter sent to some of Plaintiff's co-workers, in which Defendants "with full knowledge of the falsity of the policy violations attributed to [Plaintiff]" "recklessly labeled Plaintiff a racist and bigot" by stating that he violated various anti-discrimination policies. Opp. at 9-10. The letter stated, for example, that Plaintiff had engaged in "aggressive or threatening behavior" and "extremely egregious behavior." Wolf Decl., Ex. A (Docket No. 19-2). Plaintiff argues that such claims were made with "malice" because Defendant "lacked reasonable grounds for belief in the truth" of certain statements, in light of the lack of evidence that Plaintiff intended any harm to anybody through his actions. Opp. at 9 (quoting *Taus*, 40 Cal.4th at 721).

If Plaintiff can sufficiently allege the statements were made with malice, such claim is not necessarily precluded by the mutual interest privilege on the basis that the termination letter was only sent to United employees with a need-to-know, as Defendant contends. *See Bierbower v. FHP, Inc.*, 70 Cal.App.4th 1, 3 (1999) (the mutual interest privilege applies to communications made "without malice" regarding "subjects of mutual interest").

1   Although not alleged in the current complaint, the Court will grant Plaintiff leave to amend his defamation claim.

### 4. Intentional Infliction of Emotional Distress

Plaintiff also brings a claim for intentional infliction of emotional distress, which requires demonstrating (1) extreme and outrageous conduct; (2) intention to cause, or reckless disregard of the probability of causing, emotional distress; (3) severe emotional suffering; and (4) actual and proximate causation of the emotional distress. *See Alcorn v. Anbro Engineering*, 2 Cal.3d 493, 499, n.5 (1970).

The termination of an employee, standing alone, does not constitute extreme and outrageous conduct as a matter of law. *See Buscemi v. McDonnell Douglas Corp.*, 736 F.2d 1348, 1352 (9th Cir. 1984) (claim that employee was fired without good cause does not support a tort claim for IIED). Moreover, to the extent the claim is based on the manner in which the investigation was conducted, it is precluded by the workers' compensation doctrine, as explained above. *See Markus*, *supra*, 1990 WL 165818, at *5; *Cole*, 43 Cal.3d at 160.

However, California law recognizes that "[w]here . . . the plaintiff's emotional distress claims are based on his employer's violation of fundamental public policies of this state [like discrimination], such misconduct cannot be considered a normal part of the employment relationship and the plaintiff's remedy is not confined to workers' compensation." *Smith v. Int'l Brotherhood of Electrical Workers*, 109 Cal.App.4th 1637, 1658 (2003). Thus, Plaintiff's IIED claim is not precluded by the workers' compensation doctrine to the extent it is premised on discriminatory conduct. Plaintiff's opposition clarifies that his IIED claim is based on the underlying discriminatory conduct. Because Plaintiff has not adequately pled discriminatory conduct, however, this claim is **DISMISSED** with leave to amend.

### 5. Negligent Infliction of Emotional Distress

Negligent infliction of emotional distress is simply a species of negligence. *See Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965, 984 (1993) (holding that negligent infliction of emotional distress is simply a species of negligence); *Burgess v. Sup. Ct.*, 2 Cal.4th 1064, 1072 (1992). Thus, to the extent that Plaintiff alleges a sloppy investigation caused him emotional

distress, it is excluded by the workers' compensation doctrine and the at-will doctrine as explained above. *See Markus*, *supra*, 1990 WL 165818, at *5; *Cole*, 43 Cal.3d at 160.

Moreover, although discrimination claims are excluded from the workers' compensation bargain, an NIED claim may not be premised on discrimination because courts have held that such discrimination is inherently "intentional" conduct and therefore not within the scope of an NIED claim. *See*, *e.g.*, *Semore v. Pool*, 217 Cal.App.3d 1087, 1105 (1990) (dismissing NIED claim where the actions "were intentional, not negligent"); *cf. Coit Draper Cleaners, Inc. v. Sequoia Ins. Co.*, 14 Cal.App.4th 1595, 1609 (1993) (insurer had no duty to defend because alleged sexual harassment is inherently intentional conduct, not negligent conduct coverable by policy). That is true even when the employer only intended to terminate, but not necessarily to cause the harmful effect. *See Loyola Marymount Univ. v. Hartford Accident & Indemnity Co.*, 219 Cal.App.3d 1217, 1225 (1990) ("[A]n intentional discharge or application of an employment policy does not become an accidental occurrence even if it has only an unintended federally prohibited discriminatory effect," so insurer was not compelled to defend against discriminatory discharge claims); *Hartford Fire Ins. Co. v. Karavan Enterprises, Inc.*, 659 F.Supp. 1077, 1080 (N.D. Cal. 1987) (an intentional discharge based on a negligent failure to adhere to follow disciplinary procedures still constitutes intentional conduct).

Accordingly, the Court **DISMISSES** the negligent infliction of emotional distress claim without leave to amend.

### IV. CONCLUSION

For the reasons above, Defendant's motion to dismiss is **GRANTED**. Plaintiff has leave to amend within 30 days to state a claim for wrongful termination, defamation, and intentional infliction of emotional distress, consistent with this order. Plaintiff's claims for negligence and negligent infliction of emotional distress are dismissed without leave to amend.

///

///

///

///

13

This order disposes of Docket Nos. 10 and 17. Additionally, Docket No. 24 is **DENIED** as moot. Plaintiff does not need leave to file a tardy declination to jurisdiction of a magistrate judge because this case is no longer assigned to a magistrate judge.

**IT IS SO ORDERED**.

Dated: January 10, 2018

_____
EDWARD M. CHEN
United States District Judge