UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALFONSO G. GALARPE,<br><br>Plaintiff,<br><br>v.<br><br>UNITED AIRLINES, INC.,<br><br>Defendant. | Case No. 17-cv-06514-EMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>Docket No. 35 |

Plaintiff Alfonso Galarpe Jr. alleges he was wrongfully terminated by United Airlines ("United") on account of his status as a Filipino-American veteran over the age of 40, and that the termination caused him severe emotional distress. He was reinstated to his position after a labor arbitration found the termination lacked just cause, so he seeks only damages related to emotional distress in this case. The Court previously dismissed certain claims with prejudice, but gave Mr. Galarpe leave to amend his claims for wrongful termination and intentional infliction of emotional distress if he could adequately plead that his protected status was a substantial factor for his termination. The Court also granted Mr. Galarpe leave to amend his defamation claim to adequately plead a defamatory publication.

For the reasons below, the Court **GRANTS** United's motion to dismiss Mr. Galarpe's wrongful termination claim as pled with prejudice, **DENIES** United's motion to dismiss Mr. Galarpe's defamation claim and intentional infliction of emotional distress claim (to the extent it is based on defamatory publications), and **GRANTS** Mr. Galarpe's request to file a third amended complaint consistent with this order to attempt to state a claim for age and disability discrimination occurring after his return to United in July 2017.

## I. FACTUAL ALLEGATIONS

Plaintiff is Filipino-American and a disabled veteran. SAC ¶ 5. He worked for United for over 30 years with a "discipline free record." *Id.* ¶ 6. In July and August 2016, Defendant "accused Plaintiff of committing a hate crime and/or engaging in hate speech when Plaintiff tied two knots known as hangman's known, uniknots, or nooses." *Id.* ¶ 5. He tied knots with jet engine packing rope on two consecutive days during idle time at the end of his shift. *Id.* ¶ 8. United terminated Plaintiff after he admitted to tying the knots. Plaintiff claims that "he was genuinely not aware of the negative connotation of the noose in the context of racism in America," *id.* ¶ 11, because he "was born in the Philippines and came to the United States at the age of ten." *Id.* ¶ 12. A labor arbitrator later determined that Plaintiff's actions merited discipline but not termination, and reinstated Plaintiff to his position with backpay. *Id.* ¶¶ 32-33.

Plaintiff alleges that United's termination reflected "reckless[] . . . disregard of Plaintiff's rights" because it fired him "without adequate inquiry" after a "flawed investigation." *Id.* ¶ 17. In essence, Plaintiff alleges that United fired him knowing he harbored no malicious intent. Plaintiff alleges "[o]n information and belief" that United's "acts and omissions are based on a perception of Filipino people as compliant and malleable, and that this view is shared by those in leadership roles at [United], including . . . Mr. Van Wart," *id.* ¶ 39, who composed and sent the letter of termination. *Id.* ¶ 8.

Plaintiff also alleges that United defamed him by branding him a racist to his colleagues. The sole specific publication alleged, however, is the termination letter, which states:

> Your actions are contrary to expectations for behavior set forth for all United employees. On two different occasions you made a noose in the workplace and both times displayed the noose in an area where it was likely to be seen and perceived as threatening and intimidating by co-workers. Because such imagery is so closely associated with violent executions and hate crimes, the Company strictly prohibits it in the workplace. Thus, after considering all of the facts and your extremely egregious behavior, I have decided to terminate your employment . . .

*Id.* ¶ 15 (*see also* SAC, Ex. A). According to Plaintiff, the termination letter "in effect call[ed] him] a racist hate monger or otherwise associate[d] him with racism, bigotry, and discrimination citing [United] policies and even calling [his] conduct 'unlawful.'" *Id.* ¶ 29.

2

Plaintiff alleges that the allegation he "displayed the noose in an area where it was likely to be seen" is false because, in fact, as United knew, "[o]ne rope was tossed on the planning board and the other was left in a pile on the jet engine floor shop such that one would not even know a knot had been tied in it without picking it up." *Id.* ¶ 18.

Plaintiff also alleges that, on the day he was interviewed about the knots, he was escorted out of the building "in a humiliating and shameful fashion" without being permitted to pick up his tools first. *Id.* ¶ 22. He calls this a "gauntlet of humiliation—the literal march to Plaintiff's car in view of many of Plaintiff's co-workers." *Id.* ¶ 23. He argues that the presence of so many witnesses "goes far beyond the circumstances warranted by any arguable qualified privilege, including an investigation privilege." *Id.*¶ 25.

Because of these acts, Plaintiff alleges he "underwent great emotional distress and depression" and has required ongoing treatment. *Id.* ¶ 34.

Plaintiff also alleges that after returning to work on July 26, 2017 (following the labor arbitration), United "has failed to honor previously approved workplace reasonable accommodations," *id.* ¶ 36. As of March 27, 2018, Plaintiff claims to have exhausted his administrative remedies and requests permission to amend to state a claim for age and disability discrimination.

## II.  LEGAL STANDARD

In considering a Rule 12(b)(6) motion to dismiss, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). While "a complaint need not contain detailed factual allegations ... it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted

unlawfully." *Id.*

**III.     DISCUSSION**

A.     Wrongful Termination

A common law wrongful termination claim rests on demonstrating a violation of public policy. *Holmes v. General Dynamics Corp.*, 17 Cal.App.4th 1418, 1426 (1993); *Tameny v. Atlantic Richfield Co.*, 27 Cal.3d 167, 172 (1980). Employment discrimination violates public policy and will support a wrongful discrimination claim. *City of Moorpark v. Sup. Ct. (Dillon)*, 18 Cal.4th 1143, 1158-1160 (1998). Similarly, a wrongful discharge claim may be premised on a violation of California's Fair Employment and Housing Act ("FEHA"), as asserted by Plaintiff here. *See Stevenson v. Sup. Ct. (Huntington Mem. Hosp.)*, 16 Cal.4th 880 (1997); FAC ¶ 14. Thus, whether Plaintiff has adequately pleaded a wrongful termination claim is coincident with whether he has adequately pleaded a violation of FEHA, the sole basis of this claim.

To make out a prima facie violation of California's FEHA, a plaintiff must show that "(1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination ,demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive." *See Guz v. Bechtel Nat. Inc.*, 24 Cal.4th 317, 355 (2000). Moreover, the FEHA requires a plaintiff to show that "an illegitimate criterion was a *substantial* factor in the particular employment decision." *Harris v. City of Santa Monica*, 56 Cal.4th 203, 232 (2013) (emphasis in original, citation and quotation omitted).

Defendant challenges only whether Plaintiff has adequately pleaded that discriminatory animus was a substantial factor in his termination. Defendant is correct that Plaintiff has failed to do so. In dismissing the First Amended Complaint, the Court warned Plaintiff that, to plausibly plead discriminatory animus, he needed to allege "for example, that other employees of a different race/age/veteran status were treated more leniently than he was, that he has been subjected to racial slurs or comments, or that there were any other acts showing a pattern of discrimination against him in his 30 years of employment." Docket No. 29 at 7. He has not. Instead, he alleges only—in a conclusory fashion—that United's acts are "based on a perception of Filipino people as

4

compliant and malleable." SAC ¶ 39. No *facts* underlying that allegation are pleaded. Moreover, even if United's leadership in fact ascribed to that view, Plaintiff's allegations do not explain how that stereotype is linked his termination—*i.e.*, how it was a substantial factor in his dismissal. To the contrary, Plaintiff actually alleges that United terminated him for a different reason: because of the nooses. *See* Compl. ¶¶ 7, 9, 10, 15. And the labor arbitrator found that discipline short of termination was warranted, a conclusion Plaintiff does not contest. *Id.* ¶ 33. He does not allege that the nooses were used by United merely as a pretext for his termination.

That the termination may have been unfair, as the labor arbitrator later found, does not automatically render the termination discriminatory. Plaintiff does not allege, for example, that United identified other perpetrators who were not Filipino-American and treated them more leniently. Nor does Plaintiff allege any other facts supporting a plausible inference that United treated him unfairly on account of his protected status.

Plaintiff once again attempts to rely on a pre-*Iqbal* Supreme Court case, *Swierkiwicz v. Sorema, N.A.*, 534 U.S. 506 (2002), for the proposition that he does not need to allege *any* facts to support an inference of discriminatory animus at this stage. That is a misreading of *Swierkiwicz*, which emphasized that Rule 8 requires a plaintiff to "give the defendant fair notice of what the plaintiff's claim is and *the grounds upon which it rests*." *Id.* at 510 (quotation and citation omitted, emphasis added). The "grounds" of Plaintiff's allegation of discriminatory animus are still unclear. Moreover, as the Court previously held, post-*Iqbal*, a plaintiff must plead "sufficient factual matter . . . that permits a 'plausible inference' that a prima facie case [of discrimination] has been stated." Docket No. 10 at 7 (discussing the relationship between *Swierkiwicz* and *Iqbal*).

The Court therefore **GRANTS** United's motion to dismiss the wrongful termination claim. At the hearing, Plaintiff requested another opportunity to amend the complaint. He has already had two opportunities, however, and has not identified any other factual allegations that he could plead to support a claim despite the Court's explicit directions upon the previous dismissal. Accordingly, further amendment would be futile and will not be permitted. *See Barahona v. Union Pacific Railroad Co.*, 881 F.3d 1122, 1134 (9th Cir. 2018) (noting that leave to amend may be denied as futile if no set of facts can be proved to state a valid and sufficient claim).

B.  Defamation

A defamation claim requires demonstrating "(a) a publication that is (b) false, (c) defamatory, (d) unprivileged; and (e) that has a natural tendency to injure or that causes special damages." *Taus v. Loftus*, 40 Cal.4th 683, 720 (2007).

The Court previously dismissed Plaintiff's defamation claim because he only generally alleged that United accused him of a hate crime and branded him a racist, but failed to identify "who made the allegedly defamatory statements," "explain [how] they were false or defamatory," or "the alleged persons to whom it was made, or when it was made." Docket No. 29 at 11.

Now, Plaintiff alleges that United's termination notice contained "false statements . . . in effect calling Plaintiff a racist hate monger or otherwise associating him with racism, bigotry, and discrimination citing [United] policies and even calling Plaintiff's conduct 'unlawful,' in both a civil *and* criminal sense." SAC ¶ 29. Plaintiff alleges that "few, if any" of his co-workers "had a legitimate reason for knowing, learn[ing] of Defendant['s] decision to terminate Plaintiff, and the alleged reasons." *Id.* Plaintiff generally alleges that he was "defamed, internally and externally," and that United "made its termination decision known and the basis for that decision known to management and non-management employees . . . far in excess of what is necessary for an internal investigation and beyond the bounds of the much abused qualified privilege and investigation privilege[.]" SAC ¶ 74.

The Court first analyzes whether a defamatory statement has been alleged and then whether a publication has been alleged.

1.  Defamatory Statement

This issue presents a close question. Most of the statements in the termination letter are statements of fact whose truth Plaintiff has already admitted. *See* Wolf Decl., Ex. A at 1. For example, to the extent the letter recounts that Plaintiff tied the ropes in question, Plaintiff has already admitted those statements are true; they therefore are not false and cannot be defamatory. However, the letter also accuses Plaintiff of "extremely egregious behavior." The critical question is whether calling Plaintiff's behavior "egregious" is merely an opinion or implies a provably false assertion of fact. *See Terry v. Davis Community Church*, 131 Cal.App.4th 1534, 1552 (2005).

6

Plaintiff, for example, contends that the letter effectively branded him a racist and accused him of a hate crime. If the use of the term "egregious" connotes that Plaintiff was aware of the association nooses have with the persecution of African-Americans[1] when he hung them and thus acted with the intention of harassing his African-American co-workers, then it could be seen as asserting a fact capable of being proven true or false.

Merriam-Webster defines "egregious" as "conspicuous; especially: conspicuously bad." Thus, the word itself does not per se convey any information about Mr. Galarpe's intentions or state of mind (unlike, for example, "maliciously"). Nevertheless, in this context, it is capable of being reasonably understood in at least two ways. On the one hand, it is possible that United considers *all* nooses in the workplace to be "egregious" due to their history, regardless of the person's intentions or knowledge. In that case, the term would be an opinion and would not imply any facts about Mr. Galarpe; it would be a comment on Mr. Galarpe's conduct irrespective of his intent. On the other hand, it is possible that the term "egregious" may be construed to mean Mr. Galarpe fashioned the noose with knowledge of its hateful and hurtful connotations. This understanding reasonably implies an assertion of fact about Mr. Galarpe's state of mind, particularly where the termination letter itself does not disclose either the material information that Mr. Galarpe denied awareness of such hateful connotations or that United's investigator believed him. *Compare Terry*, 131 Cal.App.4th at 1553 (investigation summary did not imply undisclosed defamatory facts where the implication arose from truthful facts disclosed in document).

Thus, although it is generally for the Court to determine whether a defamatory statement is factual or an opinion, a jury must decide when "the statement is susceptible of both an innocent and a libelous meaning." *Terry*, 131 Cal.App.4th at 1552 (citing *Franklin v. Dynamic Details, Inc.*, 116 Cal.App.4th 375, 384-85 (2004)). Because that is the case here, Plaintiff has adequately

---

[1] Lynchings were a form of violence used to oppress, terrorize, and subjugate African-Americans between the Civil War and World War II. Researchers estimate that thousands occurred and that they were carried out with impunity. Nooses—the ropes used to hang the victims—are understood by many to be a symbol of this historical persecution of African-Americans. *See*, *e.g.*, Equal Justice Initiative, *Lynching in American: Confronting the Legacy of Racial Terror*, available at https://lynchinginamerica.eji.org/drupal/sites/default/files/2017-07/lynching-in-america-3d-edition-spread.pdf.

7

pleaded that United's use of the term "egregious" may have implied an assertion of fact as to his state of mind or intention in fashioning the nooses, particularly since all reasonable inferences must be drawn in his favor on this motion.

2. Publication

Plaintiff does not specifically identify any persons who received the termination letter other than himself. However, the termination letter itself indicates that the letter was "cc'd" (or copied) to at least three entities: "IBT, SFOLR, SFOHR." Wolf Decl., Ex. A at 1. It is unclear what those entities are or how many recipients there were, but it is plausible to infer that the letter was published to other persons.[2]

United argues that publication to those entities and to any other United employees would have been protected because California recognizes a qualified privilege by which "an employer may publish to his employees the reasons for termination of another employee, the rationale for the publication being the employer's economic interest in clarifying its policies and preventing future abuses of those policies." *Cuenca v. Safeway San Francisco Employees Fed. Credit Union*, 180 Cal.App.3d 985, 995-96 (1986) (citing *Deaile v. Gen. Telephone Co.*, 40 Cal.App.3d 841, 849 (1974)). Such a privilege may be overcome only if the communication was false *and* made with malice. Cal. Civ. Code § 47(c). Malice requires demonstrating that the speaker was "motivated by hatred, ill will or a desire to vex, annoy or injure plaintiff" or "undertaken without a reasonable belief in the truth of the published allegations." *Id.* at 998.

It could be that United's publication of the termination letter to "IBT, SFOHR, SFOLR" (the only publications adequately alleged at this time) was privileged, but that determination will rest on facts like who actually received the letter, whether that person had a legitimate interest in receiving it, and whether the motive in sharing it was innocent. Cal. Civ. Code § 47(c). Such fact based affirmative defenses cannot properly be resolved on a motion to dismiss.

---

[2] Plaintiff's counsel submits a declaration in his opposition claiming that "up to 69" other persons received the letter or the information in it. Wolf Decl. ¶ 8. The Court may not and need not rely on it in deciding whether the SAC alleges a publication. However, if Plaintiff amends his complaint to state this information, the Court warns that he should do so in a non-conclusory fashion.

8

The Court therefore **DENIES** United's motion to dismiss Plaintiff's defamation claim. Plaintiff may include more factual allegations to support this claim (particularly on the question of publication) in filing an amended complaint.

C. <u>Intentional Infliction of Emotional Distress</u>

Plaintiff also brings a claim for intentional infliction of emotional distress ("IIED").[3] The Court previously dismissed Plaintiff's IIED claim based on termination as foreclosed by the workers' compensation doctrine, but permitted him to amend only insofar as he could state a discriminatory termination in violation of public policy. *See* Docket No. 29 at 12, 8-10. As explained above, because Plaintiff fails to state a claim of discriminatory termination, the Court **DISMISSES** the IIED claim on that basis with prejudice.

In his amended complaint, however, Plaintiff also asserts that being escorted out of the building in view of his co-workers was humiliating. Even if such a claim were not precluded by the workers' compensation doctrine as the Court previously explained, *see* Docket No. 29 at 8-10, Plaintiff does not allege any circumstances that suggest the manner in which he was removed constitutes "extreme and outrageous conduct." *Buscemi v. McDonnell Douglas Corp.*, 736 F.2d 1348, 1352 (9th Cir. 1984). Courts generally reject the proposition that being escorted from the workplace upon termination rises to the level of outrageous conduct. *Cf. Nelson v. Phoenix Resort Corp.*, 181 Ariz. 188, 192, 199-200 (1994) (employee who was approached by two security persons in the office, escorted to lobby, given termination letter, and asked to leave did not allege "outrageous" conduct); *Lapidus v. New York Chapter of the New York Ass'n for Retarded Children, Inc.*, 118 A.D.2d 122, 130 (1986) (rejecting IIED claim by employee who was "thrown out in the middle of the working day and told not to go back to his office," and "humiliated" "by continued repetition" among co-workers "of what was done to him" (alterations omitted)). And there are no allegations here that United acted gratuitously to exacerbate any embarrassment already inherent to termination and removal from the premises. The Court therefore will dismiss

---

[3] The elements of a claim are (1) extreme and outrageous conduct; (2) intention to cause, or reckless disregard of the probability of causing, emotional distress; (3) severe emotional suffering; and (4) actual and proximate causation of the emotional distress. *See Alcorn v. Anbro Engineering*, 2 Cal.3d 493, 499, n.5 (1970).

1  the IIED claim on this alternate theory based on his removal from the premises.

2  However, Plaintiff may bring a claim for IIED based on the allegedly defamatory publications above. It is worth noting that an IIED claim based on defamatory publications is still subject to the same qualified privilege as a defamation claim. *See Kachig v. Boothe*, 22 Cal.App.3d 626, 641 (1971) (explaining that "the privileges recognized in connection with the tort of intentional infliction of emotional distress are similar to those recognized in defamation cases").

D.  Age and Disability Discrimination

Finally, Plaintiff does not bring a claim for age and disability discrimination in his SAC, but in his opposition to Defendant's motion requests leave to amend to assert he suffered discrimination and retaliation after his termination and arbitration upon his return to work. Plaintiff claims he has exhausted his administrative remedies as of March 27, 2018. Plaintiff may therefore attempt to state a claim for age and disability discrimination for treatment occurring after his termination (as explained above, Plaintiff may not attempt to state a claim for discriminatory wrongful termination). The Court re-iterates that Plaintiff should specifically allege the circumstances surrounding, *e.g.*, his disability, the reasonable accommodations he requested and was purportedly denied, the adverse actions he allegedly suffered as a result of his disability/age, and factual allegations supporting a plausible inference that his age/disability were substantial factors causing those adverse actions.

## IV.  CONCLUSION

For the reasons above, the Court **DISMISSES** Plaintiff's wrongful termination claim and his IIED claim to the extent it is based on such termination or on how he was removed from the premises with prejudice. The Court **DENIES** Defendant's motion to dismiss the defamation claim

///
///
///
///
///
///

10

or the IIED claim to the extent based on such defamation.  The Court **GRANTS** Plaintiff leave to amend the complaint to state a claim for age/disability discrimination and retaliation (except with respect to his termination).  An amended complaint must be filed by May 4, 2018.

This order disposes of Docket No. 35.

**IT IS SO ORDERED**.

Dated: April 2, 2018

_____
EDWARD M. CHEN
United States District Judge